IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| KENNETH YATES and RICHMOND MAY DAY COALITION/ORGANIZING COMMITTEE,<br><br>    Plaintiffs,<br><br>  v.<br><br>BRYAN NORWOOD, in his official capacity as Chief, City of Richmond Police Department; CAPTAIN MICHAEL J. SHAMUS, in his official capacity as head of the Special Events Division, Richmond Police Department; and SERGEANT JOHN WARD, in his official capacity as Sergeant, Special Events Division, Richmond Police Department.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil No. 3:11cv258<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSE MEMORANDUM TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The defendants', in their memorandum in support of summary judgment, rely on a truncated lineage of case law to suggest that the Richmond Police Department's discretionary practice of requiring parade applicants to pay a fee as a condition for obtaining a parade permit does not run afoul of the constitution. As set forth in the plaintiffs' Memorandum in Support for Summary Judgment and in this memorandum, the practice is a clear affront to the First Amendment. Furthermore, the plaintiffs satisfy the four-part test for a permanent injunction. *See ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

1

I.  DEFENDANTS' PRACTICE OF REQUIRING PARADE PERMIT APPLICANTS TO PAY FOR EXTRA-DUTY POLICE VIOLATES THE FIRST AMENDMENT.

The defendants' Motion for Summary Judgment relies on a 1941 Supreme Court decision that according to the defendants posits that the "exercise of discretion in assessing" "fees for police presence at a parade" does not run "afoul of the Constitution." Mem. in Supp. of Defs.' Mot. for Summ. J. at 7, citing *Cox v. New Hampshire*, U.S. 569, 569 (1941). The Court, however, specifically addressed this exact issue again five decades later in deciding "whether the free speech guarantees of the First and Fourteenth Amendments are violated by an assembly and parade ordinance that permit a government administrator to vary the fee for assembly or parading to reflect the estimated cost of maintaining public order." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 124 (1992). The Court, citing *Cox,* reiterated that "government, in order to regulate competing uses of public forums, may impose a permit requirement on those wishing to hold a march, parade, or rally." *Id.* 505 U.S. at 130. The Court, however, distinguished the *Cox* decision by explicitly stating that "[s]uch a scheme…must meet certain constitutional requirements" and that "[i]t may not delegate overly broad licensing discretion to government officials." *Id.* 505 U.S. at 130. Furthermore, the Court noted that "there was in *Cox*, no testimony or evidence that the statute granted unfettered discretion to the licensing authority." The Richmond police practice, however, grants unfettered discretion to the Department in issuing parade permits. *See* Mem. in Supp. of Pls. Mot. for Summ. J.

Furthermore, the reliance on *Cox* to support the assertion that discretion of officials in imposing a fee for the "maintenance of public order" when depending upon content-neutral factors is misplaced in light of the *Forsyth* Court's distinction on that specific point.

As the Court noted, "no fee was actually assessed" in *Cox* "for the maintenance of public order." *Forsyth,* 505 U.S. at 136, citing *Cox,* 312 U.S. at 577. In fact, as the *Forseyth* Court noted, the discretion used by the government in *Cox* was actually a "content-based permit fee" that allowed for "charging a premium in the case of a controversial political message" with the justification of "raising revenue for police protection." *Forsyth,* 505 U.S. at 136, citing *Cox*, 312 U.S. at 577. As the Court noted, "While this undoubtedly is an important government responsibility, it does not justify a content-based permit fee."[1] *Id.* at 136.

When courts have allowed the government to charge demonstrators for police services, fixed criteria have been required to constrain the discretion of officials. *See*, *e.g. Union Food & Commercial Workers Union v. City of Valdosta*, 861 F. Supp. 1570, 1584 (M.D. Ga. 1994) (allowing fees to be charged for traffic and crowd control facilities where "the fee is not set by the issuing official, but 'from time to time by the Mayor and City Council,'" and "there is no indication that any individual involved in the permit process is allowed to alter the pre-set fee in response to a particular speaker"); *Int'l Women's Day March Planning Committee v. San Antonio*, 619 F.3d 346, 365-66 (5th Cir. 2010) (upholding ordinance requiring permit holders to pay for clean-up and traffic control, where the ordinance sets forth a list of factors to consider in determining the number of peace officers and traffic control devices necessary). It is worth noting that even in the case cited by the defendants to support the assertion that "defraying the cost of traffic control by requiring parade sponsors to pay for such…is a significant government interest" the ordinance included "an extensive list of factors to be taken into account by the Police Department" that comprised

---

[1] The Defendants also highlight the size of the fee assessed, highlighting that the filing fee for this case exceeds the conditional fee assesses on the plaintiffs to obtain a permit. The court should note, however, that "A tax based on the content of the speech does not become more constitutional because of the small tax." *Forsyth,* 505 U.S. at 136.

3

"a sufficiently objective and definite standard by which to project associated police costs." *Gay & Lesbian Services Network, Inc. v. Bishop*, 841 F.Supp. 295, 296 (W.D.Mo 1993); *see Gay and Lesbian Services Network, Inc. v. Bishop*, 832 F.Supp. 270, 275 (W.D.Mo. 1993) for the list of specific factors in the ordinance required of the police department in assessing a fee.

The defendant' further assert that similar ordinances have been upheld, citing *MacDonald v. City of Chicago*, 243 F.3d 1021 (7th Cir. 2001), and *Cox.* The ordinance in *MacDonald* can be distinguished from the Richmond City Code, however, in two distinct ways. First, while the criteria regarding traffic flow and traffic hazards are similar, the court noted that the ordinance "limits the Commission's discretion by requiring the Commissioner to grant a parade permit, unless specifically articulated public-safety concerns exist." *MacDonald,* 243 F.3d at 1028. No such similar requirement exist in Richmond to limit the Richmond Police Department's discretion. Second, the issue in *MacDonald* was whether the Chicago Ordinance gave "unfettered discretion to approve or deny parade-permit applications," whit the issue in this case is whether the Richmond Police Department has unfettered discretion to assess conditional fees for parade permits. *Id.* at 1026. The distinction is significant because the Police Department does not just assess the safety concern of traffic flow and traffic hazards, but places a conditional prior restraint fee for the issuance of permits without specific and "narrow, objective, and definite standards to guide the licensing authority." *Forsyth,* 505 U.S. at 130. As in *Forsyth*, in Richmond, "the decision of how much to charge for police protection or administrative time – or even whether to charge at all – is left to the whim of the administrator. There are no articulated standards either in the ordinance or in the [city]'s established practice." *Id.* 505 U.S. at 133.

  II.  PLAINTIFFS SATISFY THE FOUR FACTORS REQUIRED FOR A PERMANENT INJUNCTION.

  The plaintiffs satisfy the four-factor test required for a permanent injunction. *ebay Inc. v. MercExchange, L.L.C.*, 547 U..S. 388, 391 (2006).  Specifically (1) the plaintiffs have suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Id.* at 391.

  First, as pointed out by the defendants, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, (1976).  In this case, regardless of whether the parade takes place or not, the plaintiffs have suffered a First Amendment injury by being assessed a fee without specific, neutral criteria.

  Moreover, not allowing the parade to take place on the public roads impinges on the plaintiffs' First Amendment rights, even when alternative forums for expression exist.  In denying the May Day Coalitions parade permit, the Richmond Police Department claimed the marchers' were still provided an alternative means of expression, and thus implied that their First Amendment rights were not curtailed.  However, as noted by the Ninth Circuit, "by routing marchers onto sidewalks" the government denies use of a "quintessential traditional public fora," "in advance of actual expression, namely, the streets."  *Seattle Affiliate of the October 22nd Coalition to Stop Police Brutality v. Seattle*, 550 F.3d 788, 795 (9th Cir. 2008), citing *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 276 (1992).

5

Furthermore, the defendants grossly misstate the standard regarding alternative forums for expression applied by the Eleventh Circuit in *Nationalist Movement v. City of Cumming, Georgia*, 92 F.3d 1135 (11th Cir. 1996), stating "Where such an alternative exists, no unreasonable restraint on speech could be found in any event." Mem. in Supp. of Defs.' Mot. for Summ. J. at 8. Rather, the Eleventh Circuit clearly held that the government "may enforce reasonable restrictions on the time, place, and manner of the speech if they are 'content neutral, are narrowly tailored to achieve a significant government interest, and leave open ample alternative channels of communication.'" *Nationalist Movement*, 92 F.3d at 1139, citing *Perry Education Assoc. v. Perry Local Educators' Assoc.*, 460 U.S. 37 (1983). Only after the court found that the government satisfied the other prongs of the test did the court also find that the prohibition of Saturday morning parades on certain streets in the city still allowed for ample alternatives channels of communication. *Id.* 92 F.3d at 1140.

Even the potential loss of a First Amendment right, however, satisfies the irreparable injury requirement. *Newsom ex rel. Newsom v. Albemarle County Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) (overturning a district court's denial of a preliminary injunction when the injury suffered by the plaintiff was the potential loss of a First Amendment right).

Second, monetary damages are inadequate to compensate for the loss of First Amendment rights. "The price tag for the loss of First Amendment rights is certainly difficult to establish." *Ostergren v. McDonnell*, 643 F. Supp. 2d 758 (E.D. Va. 2009); *see also Brinkman v. Budish*, 692 F. Supp. 2d 855, 866 (S.D. Ohio 2010) ("[t]here are no available remedies at law that are adequate to compensate for a loss of First Amendment rights."); *Safeway Inc. v. CESC Plaza Ltd. Partnership*, 261 F. Supp.2d 439, 469 (E.D.Va. 2003) ("As a

result, inadequacy of damages and the irreparability of harm are often treated interchangeably in the permanent injunction analysis.").

Third, in balancing the hardships between the violation of the plaintiff's First Amendment rights and defendants' collection of revenue raising fees, a remedy in equity is clearly warranted. The disallowance of collecting fees assessed under a scheme devoid of clear guidelines that cabin official discretion will not impinge on the Richmond Police Departments police powers to secure the general warfare. *See Newsom*, 354 F.3d at 261 (finding that the government is "in no way harmed" if prevented from enforcing a regulation that is found to be unconstitutional.")

Finally, the Fourth Circuit unequivocally noted that "upholding constitutional rights serves the public interest." *Newsom*, 354 F.3d at 261; s*ee also Homans v. Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) ("We believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression.")

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the defendants' Motion for Summary Judgment be defined, and that the plaintiffs' Motion for Summary Judgment be granted.

    Respectfully submitted,

    KENNETH YATES
    RICHMOND MAY DAY COALITION/ORGANIZING
    COMMITTEE

    By Counsel

  /s/_____
Rebecca K. Glenberg (VSB #44099)
Thomas O. Fitzpatrick (VSB #80364)
American Civil Liberties Union of
      Virginia Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, Virginia 23219
Telephone: (804) 644-8080
Facsimile:  (804) 649-2733
rglenberg@acluva.org
tfitzpatrick@acluva.org

**CERTIFICATE OF SERVICE**

      I hereby certify that on this <u>28th</u> day of October, 2011, I electronically filed this document through the ECF system, which will send a notice of electronic filing to the following:

    Brian K. Telfair
    Deputy City Attorney
    Office of the City Attorney
    City Hall, Room 300
    900 E. Broad Street
    Richmond, Virginia 23219
    Brian.Telfair@richmondgov.com

                                                        /s/_____
                                                       Thomas O. Fitzpatrick